# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **10-09065-hb**

Adversary Proceeding Number: **11-80053-hb**

### ORDER DENYING DEBTOR'S DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(4)(A)

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**08/10/2012**



US Bankruptcy Judge
District of South Carolina

Entered: 08/10/2012

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re, <br><br> Kenneth Paul Holmes and Gina Easter Holmes, <br><br> Debtor(s). | C/A No. 10-09065-HB <br><br> Adv. Pro. No. 11-80053-HB <br><br> Chapter 7 |
| Robert F. Anderson, <br><br> Plaintiff(s), <br><br> v. <br><br> Kenneth Paul Holmes, <br><br> Defendant(s). | **ORDER DENYING DEBTOR'S DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(4)(A)** |

**THIS MATTER** came before the Court upon the Complaint filed by the Plaintiff Robert F. Anderson, Chapter 7 Trustee, objecting to the discharge of Defendant Kenneth Paul Holmes, pursuant to 11 U.S.C. § 727(a)(4)(A).[1] The Defendant filed an Answer, denying that he "knowingly and fraudulently" made a false oath or account that was materially related to the bankruptcy case. Upon the request of the parties, the Court received post-trial briefs.[2] From a review of the pleadings and submissions, and after consideration of the testimony and arguments presented at trial, pursuant to Fed. R. Bankr. P. 7052, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The Court has jurisdiction over the parties and this is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(J). Defendant was the sole witness presented at trial. He is a graduate of

---

[1] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.
[2] Doc. Nos. 23 & 24, filed Aug. 2, 2012.

Clemson University and received a bachelor's degree in Economics. He testified that he previously worked as a real estate developer and appraiser.

Prior to October 1, 2007, Defendant was the sole owner of Stonegate Properties, Inc. ("Stonegate"). Stonegate is an entity Defendant created in 1997 to purchase, rehabilitate, and sell residential properties in Central and Coastal South Carolina—namely, Columbia, Myrtle Beach, Surfside Beach, Garden City, and Murrells Inlet. Defendant funded his business operations with a $2,000,000 line of credit from Branch Banking & Trust ("BB&T").

Beginning on or about October 1, 2007, and continuing through at least November 1, 2008, Defendant was involved in a conspiracy with various people and entities to obtain funds from federally-insured lending institutions. Defendant would sell—either individually or though Stonegate—properties he or it owned to straw purchasers, who were not creditworthy or did not exist, in order to realize a profit from those sales. Defendant and his co-conspirators successfully induced the Royal Bank of Canada ("RBC"), JP Morgan Chase Bank ("JP Morgan"), Plantation Federal Bank ("Plantation"), and SunTrust Bank ("SunTrust") to make loans on these properties being sold. At the closing of these property sales, Defendant—directly or through Stonegate—would pay a portion of the sale proceeds to the co-conspirators in the form of a "kick-back" or a sharing of the illicitly-obtained proceeds.

On March 8, 2010, the United States of America filed an Information[3] against the Defendant, accusing him of various criminal activities arising out of the foregoing conspiracy.[4] The Information states that Defendant:

---

[3] Ex. 3
[4] *United States v. Holmes*, CR. No. 10-cr-00236-TLW (D.S.C. Mar. 8, 2010).

>   knowingly and willfully did combine, conspire . . . and have a tacit understanding with others to execute and attempt to execute a scheme and artifice to defraud and to obtain monies owed by, and under the custody and control of, financial institutions by means of false and fraudulent pretenses, representations, and promises, in violation of title 18, United States Code, Section 1344.[5]

On April 28, 2010, Defendant entered a guilty plea as to the various criminal activities arising out of the conspiracy.[6]

Defendant testified that after the Information was issued, BB&T revoked the line of credit that funded Defendant's business operations, pursuant to a "morals" clause. Despite Defendant's attempts to negotiate, BB&T called the line of credit. Defendant testified that this event perpetuated his bankruptcy filing.

On December 22, 2010, Defendant and his wife filed a voluntary petition for Chapter 7 relief as well as Schedules and Statements of Affairs, signed under penalty of perjury. Defendant did not list any obligation that may be due to RBC, JP Morgan, Plantation, or SunTrust, as a result of his actions outlined above. Defendant also did not disclose the criminal action filed against him.

On January 14, 2011, RBC filed a lawsuit against Defendant and others in the United States District Court in Florence, South Carolina, seeking damages for its financial losses suffered from the conspiracy.[7] Defendant testified that he was served with a copy of the complaint in February 2011.

Thereafter Defendant amended his Schedule F—Creditors Holding Unsecured Nonpriority Claims, on March 9, 2011,[8] and added the following:

---

[5] Ex. 3 at 1.
[6] Ex. 4.
[7] *RBC Bank (USA) v. Epps, et al.*, C/A No. 4:11-cv-00124-TLW-TER (D.S.C. 2011).
[8] Doc. No. 86, C/A No. 10-09065-hb.

3

>JP Morgan Chase Bank
>>13777 Ballantyne Corporate Place
>>Charlotte, NC 28227
>
>RBC Bank
>>P.O. Box 1220
>>Rocky Mount, NC 27802
>
>SunTrust Mortgage
>>P.O. Box 79041
>>Baltimore, MD 21279-0041

All of these claims are scheduled as "joint"[9] and "disputed" with an amount due of $0. No further explanation or information regarding these claims was disclosed.

In November 2011, Defendant was sentenced by the United States District Court to ten months imprisonment—five of which he served at a federal prison and the other five served under home confinement—as well as $2,480,000 in restitution. At trial Defendant testified that he has commenced restitution payments. Although Defendant had not been sentenced at the time of filing his voluntary petition, Defendant testified that at the time he plead guilty—approximately eight months prior to the petition date—he believed there was a possibility of restitution as a part of his sentence. However, he explained that he did not consider any such responsibility to be a "debt" or those entities to be "creditors." Rather, Defendant testified that he believed they were a part of the criminal case and would be handled separately, and he would be required to pay those entities regardless of the bankruptcy proceeding.

On March 25, 2011, RBC filed an adversary proceeding seeking to except its debt arising from the foregoing conspiracy from Defendant's discharge pursuant to § 523(a)(2)(A) and (B). Defendant did not contest the relief sought by RBC. On July 14,

---

[9] At the trial, counsel for the Defendant clarified that this was a typographical error.

4

2011, a default judgment was entered, excepting $1,884,148 debt from any discharge that may be granted.

The Trustee filed this action on May 4, 2011, to deny Defendant's discharge pursuant to § 727(a)(4)(A). The trial was delayed due to the Defendant's incarceration, and was eventually held on July 19, 2012.

### DISCUSSION AND CONCLUSIONS OF LAW

The Bankruptcy Code provides that a debtor seeking Chapter 7 relief shall be granted a discharge of his debts unless "the debtor knowingly and fraudulently, in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To prevail and deny the Defendant's discharge under § 727(a)(4)(A), the Trustee must prove that "the debtor . . . made a statement under oath which he knew to be false, and he must have made the statement willfully, with intent to defraud." *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987). In an action brought under § 727, the Trustee must prove his case by a preponderance of the evidence. Fed. R. Bankr. P. 4005; *Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir. 1988). Once the Trustee makes a prima facie case, the burden of proof shifts to the Defendant to offer credible evidence to satisfactorily explain his conduct; however, the ultimate burden remains with the Trustee objecting to discharge. *Anderson v. Hooper (In re Hooper)*, 274 B.R. 210, 215 (Bankr. D.S.C. 2001) (citations omitted).

The elements of § 727(a)(4)(A) are as follows: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000). In the instant matter, there is no dispute that the Defendant made a false statement under oath by

5

omitting the creditors and debts at issue from his Schedules. However, the Defendant contends that he did not do so knowingly or with the intent to defraud and that the omission was not material to the bankruptcy case.

The subject matter of a false oath is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. *Williamson*, 828 F.2d at 251-52.

> The fact that a debtor may believe that omitted information concerned a worthless business relationship or holding is a ***specious defense***; "[i]t makes no difference that he does not intend to injure his creditors when he makes a false statement [because c]reditors are entitled to judge for themselves what will benefit, and what will prejudice, them."

*Cesnick v. Cannon (In re Cannon)*, Adv. Pro. No. 09-22, 2009 WL 2209352, at *4 (Bankr. N.D.W. Va. July 24, 2009) (emphasis added) (quoting *Chalik v. Moorefiled (In re Chalik),* 748 F.2d 616, 618 (11th Cir. 1984)). "In other words, the monetary value of the false statement or omission is not dispositive; rather, a statement or omission is material if it adversely affects the ability of the trustee or creditors to fully discover the debtor's assets and financial condition." *Jalajel v. Pugsley*, C/A No. 1:11CV163 (LMB/IDD), 2011 WL 1348312, at *2 (E.D. Va. Apr. 8, 2011) (citing *Farouki v. Emirates Bank Int'l, Ltd.,* 14 F.3d 244, 251 n.19 (4th Cir.1994)).

In the instant matter, Defendant omitted substantial claims and creditors from his initial Schedules. Clearly this was a material omission. It is of no moment, as Defendant argues, that he thought these debts may be paid as restitution through the criminal proceeding or whether they may be exceptions to discharge under. *See Cannon*, 2009 WL 2209352, at *4.

> [T]he very purpose of certain sections of the law, like 11 U. S .C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the

6

> reality of their affairs. ***The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction.*** As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure."

*In re Tully*, 818 F.2d at 110 (emphasis added) (quoting *In re Mascolo,* 505 F.2d 274, 278 (1st Cir. 1974)).

"[I]ntent to defraud 'involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression.'" *Keeney*, 227 F.3d at 685-86 (quoting *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)). "Because a debtor is unlikely to testify directly that his intent was fraudulent, the courts may deduce fraudulent intent from all the facts and circumstances of the case." *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985). Fraudulent intent can be inferred from circumstantial evidence or from a course of conduct. *Williamson,* 828 F.2d at 252. Additionally, a reckless indifference as to whether a representation is true is sufficient to constitute the requisite fraudulent intent. Considering the circumstances surrounding Defendant at the time his Schedules were filed, the Court finds that Defendant's conduct was fraudulent, or at least represented reckless indifference toward providing complete and accurate information.

"Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir. 1987). A debtor should make every attempt to report accurate information in his petition and schedules. By omitting the debts or alleged debts in question here from his initial Schedules, Defendant failed to disclose **the most** significant facts from his financial situation. Furthermore, where a debtor subsequently discloses omitted

7

information, "such later disclosure does not expunge a prior false oath." *Lafarge N. Am., Inc. v. Poffenberger (In re Poffenberger)*, 471 B.R. 807, 819 (Bankr. D. Md. 2012) (citing *Rosenbaum v. Kilson (Matter of Kilson),* 83 B.R. 198, 203 (Bankr. D. Conn.1988)).

At trial the Court found Defendant to be a fairly credible witness, attempting—with the benefit of hindsight—to make amends for any mistakes. However, looking to the Schedules and the totality of the circumstances, and applying the appropriate case law, the Court finds that the relief requested by the Trustee pursuant to § 727(a)(4)(A) must be granted.

**IT IS THEREFORE ORDERED** that pursuant to §727(a)(4)(A) Defendant, Kenneth Paul Holmes' discharge is hereby denied.